Filed 12/4/24  Smith v. CF United CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| ANTHONY SMITH,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>CF UNITED, LLC, et al.,<br><br>        Defendants and Appellants. | C099314<br><br>(Super. Ct. No. STK-CV-UOE-2019-0008249) |

This case requires us to interpret and apply Code of Civil Procedure section 1281.97,[1] which provides, "In an employment . . . arbitration that requires . . . the [employer] to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date," the employee is permitted to withdraw from arbitration and proceed in court, and the court is required to impose sanctions against the employer by ordering it to pay the

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

employee's attorney fees. (§§ 1281.97, subds. (a), (b), (d), 1281.99, subd. (a).)

Plaintiff and respondent Anthony Smith asserted several claims against his former employers, defendants and appellants Apro, LLC, CF United, LLC, and Raymond Young (collectively Apro), and he submitted them to arbitration with the American Arbitration Association (AAA). Shortly thereafter, Smith claimed Apro paid AAA's fees more than 30 days after the due date, and Smith attempted to withdraw his claims from arbitration. The trial court initially found the due date was ambiguous due to a series of clerical errors made by AAA. Because of these errors and ambiguities, the trial court found the later of two possible due dates applied, and the fees were timely paid.

Over two years later, however, the trial court reconsidered its initial ruling in light of several recently published opinions holding the payment deadline in section 1281.97 must be strictly enforced and is subject to no exceptions. This time, the trial court allowed Smith to withdraw from arbitration and it awarded him $19,942.50 in attorney fees. Apro appeals the trial court's second order on several grounds. We find the trial court got it right the first time, and thus reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

*1.      Smith is Compelled to Arbitrate*

In 2019, Smith filed a complaint against Apro that included individual causes of action for violations of the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) (we will refer to these as the "individual claims"), and a representative cause of action brought under the Labor Code Private Attorney General Act of 2004 (Lab. Code, § 2698 et seq.), or PAGA (we will refer to this as the "representative PAGA claim"). Apro filed a motion to compel arbitration, arguing Smith agreed to arbitrate all disputes arising out of his employment. The trial court granted the motion as to the individual claims and denied it as to the representative PAGA claim. The trial court ordered the action stayed "pending conclusion of the parties' arbitration proceedings," and the stay "shall be lifted upon notice filed with the court by either party that arbitration

2

has concluded." Pursuant to this order, Smith's individual claims would be arbitrated first, and once the arbitration was concluded, the parties would return to court to litigate the representative PAGA claim.

In June 2020, Smith submitted his individual claims to AAA. The arbitration was never actually held. We explain why in the next section.

2. *Smith's Withdrawal from Arbitration and Motion for Attorney Fees*

In August 2020, Smith filed a "notice" informing the trial court that Apro had failed to pay AAA's required filing fee within 30 days of the due date as required by section 1281.97, and he thus elected to withdraw his individual claims from arbitration and proceed in court. The notice did not actually ask the court to take any action. Instead, it simply stated, "the stay in the above-entitled matter is lifted upon the filing of the instant notice." Two weeks after filing this notice, Smith filed a motion for attorney fees pursuant to section 1281.99 (we will refer to this as the "fee motion" or the "initial fee motion").

Apro opposed both the fee motion and what it characterized as Smith's attempt to withdraw from arbitration and reinstate the litigation, and it asked the court to order Smith to resume arbitration. Apro argued it paid the filing fee on time or its failure to do so should be excused.

Because they are important, we explain the facts underlying the timeliness issue in some detail (all dates are in 2020).

On June 9, AAA sent a letter to both parties about the arbitration. The record contains two different versions of this letter. One version states:

> "We have received the employee's portion of the filing fee in the amount of $300.00. Accordingly, we request that the employer pay its share of the filing fee in the amount of $1,900.00 on or before June 23, 2020. Upon receipt of the balance of the filing fee, the AAA will proceed with administration."

The other version states:

3

"Per the agreement submitted with this filing, the employer is responsible for payment of the full filing fee, $2,200.00. Accordingly, we request that the employer submit payment in the amount of $2,200.00 on or before June 23, 2020. Upon receipt of the balance of the filing fee, the AAA will proceed with administration."

Other than this one paragraph, the letters are identical.[2] Both versions reiterate, "Payment is due on June 23, 2020," and state, "As this arbitration is subject to California Code of Civil Procedure 1281.97 . . . , payment must be received by July 24, 2020[3] or the AAA will close the parties' case. The AAA will not grant any extensions of this payment deadline. [¶] Please note payment should be submitted by credit card or electronic check. A secured paylink will be forthcoming with instructions to submit payment via either method."

On June 25, AAA sent a letter to both parties stating it had not received payment from Apro, it would "close its case on July 24, 2020 if payment is not received," and payment should be made by credit card or electronic check utilizing a secured paylink. Counsel for Apro stated he realized that same day that AAA had not yet sent a paylink,

---

[2] We note Apro never mentions the fact that there are two versions of the June 9 letter, and it is unclear whether it is aware of this fact because all of its filings (in both the trial court and this court) reference only the version stating they owed $1,900. Moreover, it appears Smith may not have realized there were two versions until sometime around June 2023, because that is the first time he mentioned that fact in the trial court. Finally, it appears clear the only version of the letter the trial court was aware of was the version stating Smith had paid $300 and Apro thus owed $1,900. Although not mentioned by the parties, the fact that AAA sent two conflicting letters provides further support for the trial court's finding, discussed below, that AAA made a series of clerical errors that created ambiguity about Apro's payment obligation.

[3] As noted at the outset, payment must be within 30 days after the due date, and 30 days after June 23 is July 23, not July 24. It thus appears AAA miscalculated the statutory payment deadline, and if Apro had paid on July 24, their payment would technically have been one day late. Although neither party mentions this fact, it is yet another example of an error on the part of AAA creating ambiguity about Apro's payment obligation.

4

and he e-mailed AAA to request one. AAA sent a paylink that day along with a message that stated, "You have requested to make a payment of an amount due to the American Arbitration Association as follows: [¶] . . . [¶] Amount: $2,200.00."

The next day (i.e., June 26), counsel for Apro asked AAA to send him a copy of the invoice so his client could process payment, and AAA e-mailed an invoice that same day. The invoice stated the amount due was $2,200, the "Due Date" was July 24, and payment should be made by check and mailed to AAA's New Jersey address.

On July 24, which was a Friday, AAA sent Apro's counsel an e-mail stating, "You have requested to make a payment of an amount due to the American Arbitration Association as follows: [¶] . . . [¶] Amount: $1,900.00." The e-mail also stated, "Please note payment is due today, 7/24." Apro's counsel stated he was "confused" by this e-mail because it appeared AAA had two invoices in its system — one for $1,900 and one for $2,200 — with different due dates (June 23 and July 24). He also learned his client could not pay the fee that day because its comptroller was on vacation. He thus e-mailed AAA that afternoon to ask for a two-week extension, but he did not receive a response.

On Monday, July 27, Apro's counsel e-mailed AAA to follow up on his request for a two-week extension. AAA responded that day, copied Smith's counsel on its e-mail, and asked if Smith agreed to the extension. Smith's counsel responded within an hour that Smith did not agree to the extension because the July 24 deadline for payment had already passed, and Smith therefore elected pursuant to section 1281.97 to withdraw his claims from arbitration and proceed in court. Later that afternoon, Apro paid $2,200 to AAA, and AAA sent a letter to both parties stating it was closing its file on the matter because Apro "did not submit the filing fee by the due date provided on our June 9, 2020 and June 25, 2020 correspondence" and Smith had informed it he intended to withdraw the claim from arbitration.

Based on the above timeline of events, Smith's position was that Apro had to pay the filing fee by July 24, it failed to do so, and he was thus entitled to withdraw from

5

arbitration and proceed with litigation.  Apro's position was that its payment was timely in light of AAA's failure to send a paylink until after the due date and its conflicting e-mails and invoices, or, alternatively, that its failure to make timely payment should be excused due to mistake or inadvertence.

The trial court issued a written order denying Smith's fee motion.  This order is critical to the resolution of this appeal because it is the order that Smith ultimately persuaded the trial court to reconsider, and we thus describe it at some length.

The trial court began by noting, "this case revolves around two dates:  1) the 'due date' for the payment of the arbitration fees; and 2) the [section] 1281.97 deadline of '30 days after the due date.' "  Smith argued the due date was June 23, as stated in AAA's June 9 letter (which would make July 24 the statutory payment deadline);[4] Apro argued the due date was July 24, as stated in the June 26 invoice (which would make August 23 the statutory payment deadline); and it was undisputed Apro paid the fee on July 27.

The trial court found it was "impossible" for Apro to pay the fee by the June 23 due date because AAA did not send a secured paylink until June 25, and "[c]onfusing matters more, the paylink sent . . . by AAA now asked for a higher payment of $2,200 instead of the initial $1,900."  The trial court found this was a "clerical error" on AAA's part, and that AAA "compounded its initial clerical error" by sending out a "second invoice" on June 26 for $2,200 that stated the due date was July 24.[5]  It noted, "There is no doubt that the two invoices . . . were internally inconsistent on the issue of the 'due date,' " and these inconsistent due dates led to inconsistent payment deadlines pursuant to

---

[4]     See *ante*, footnote No. 3.

[5]     The trial court noted these errors occurred "in the middle of an unprecedented COVID-19 global pandemic."  In particular, they occurred three months after the Governor declared a state of emergency and directed all Californians not providing essential services to stay home.  (See *E.P. v. Superior Court* (2020) 59 Cal.App.5th 52, 54-55.)  This may explain the errors.

section 1281.97. If the due date was June 23, then Apro's payment was untimely, but if the due date was July 24, its payment was timely.

The trial court then explained: "The crucial issue [is] whether this Court can . . . find[] that [Apro was] in material breach of the arbitration agreement [thereby] waiving [its] right to arbitrate, in the face of such ambiguity. The answer is no. Because of the ambiguity regard[ing] the 'due date' of the arbitration fee created by the two invoices, this Court cannot reject the later possible due date of [July 24] indicated by the [June 26] invoice, and its [section] 1281.97 date of [August 23], under which [Apro's] payment of the arbitration fee on [July 27] would be timely." It also noted there was "no conduct by [Apro] that is inconsistent with pursuing arbitration. [Apro has] consistently sought to arbitrate, did not unduly delay arbitration, [and] paid the fee as soon as possible when it was able to do so. . . . The Legislature intended to punish the 'strategic refusal to pay fees.' It is apparent that none of the concerns that actuated the Legislature are implicated. [Apro's] actions were neither 'strategic' nor a 'refusal.' " The trial court thus found Smith failed to establish Apro violated section 1281.97 by paying the fee after the statutory deadline, and because it found no violation of section 1281.97, it denied the request for attorney fees.

The result was that Smith had to arbitrate his individual claims, and his representative PAGA claim remained stayed until the arbitration concluded.

### 3. *Smith's Motion for Reconsideration*

Over two years later, in March 2023, Smith filed a motion to lift the litigation stay, arguing that, pursuant to several recently published cases interpreting section 1281.97, the trial court had relied on impermissible factors when it determined Apro did not violate that statute. Apro opposed the motion, arguing it was actually a noncompliant motion for reconsideration of the order denying the initial fee motion. The trial court denied the motion without prejudice, ruling, "While [Smith's] substantive argument has merit, the problem is the procedural device that [Smith] has used. If, as [Apro] argue[s], the Motion

7

is a 'disguised' motion for reconsideration, then this Motion to Lift Stay is deficient because it does not attempt to address the standards for reconsideration under California law. The Court concludes the more prudent course is to deny without prejudice [Smith's] Motion to Lift Stay, and grant leave to [Smith] to file the appropriate motion using the appropriate procedural device that lays out the proper standards this Court is to use."

Smith then filed a motion for reconsideration pursuant to section 1008. He once again argued that several recently published cases "expressly disallow a trial court from considering" the types of factors the trial court considered in finding Apro's payment was timely. We will discuss these cases in more detail below. For present purposes it is sufficient to note they all hold the statutory payment deadline in section 1281.97 must be strictly enforced and is not subject to defenses like inadvertent error, lack of prejudice, or substantial compliance. Smith argued it was "indisputable" Apro failed to pay the fee by the statutory deadline, it was thus in material breach of the arbitration agreement as a matter of law, and he was entitled to withdraw from arbitration and proceed in court and to recover his attorney fees.

Apro opposed the motion, arguing Smith failed to comply with the requirements of section 1008, and, in any event, the recent cases were inapplicable because the trial court had already found Apro timely paid the fee.

The trial court granted the motion. It first found it had authority to reconsider its prior order denying the initial fee motion pursuant to both section 1008, subdivision (c), and its inherent authority "to reconsider its previous interim orders on its own motion, as long as it gives the parties notice that it may do so and a reasonable opportunity to litigate the question." (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1097.)

It then noted that, when it issued the prior order in 2020, there was "no guidance from the courts of appeal" on how to interpret section 1281.97, but since that time, five published cases had interpreted section 1281.97 and held its payment deadline establishes

a "clear" and "bright-line" rule that courts must "strictly enforce." The trial court found these new cases "constitute a change of law" requiring it to reconsider its prior order.

The trial court then rejected Apro's argument that these new cases were distinguishable because they all involved a mistake by the defendant rather than a mistake by the arbitration provider, explaining, "based upon the strict interpretation of the relevant statutes, and the Legislature's preference for a clear rule, this Court cannot find an exception to the application of these statutes based upon who made the mistake." Finally, it found, "Based upon the strict construction of . . . sections 1281.97 through 1281.99, and the bright-line rule established by the five Court of Appeal decisions, this Court . . . now finds that [Smith] has carried his burden of establishing that [Apro has] failed to pay the fees or costs to initiate the arbitration proceeding, and that this failure constituted a material breach of the arbitration agreement under section 1281.97." The trial court thus permitted Smith to withdraw his claims from arbitration and proceed in court and awarded him $19,942.50 in attorney fees (the amount requested in the initial fee motion).

This appeal followed.[6]

## DISCUSSION

Apro challenges the order granting the motion for reconsideration on four grounds: (1) the trial court abused its discretion when it agreed to reconsider the order denying the initial fee motion; (2) the trial court erred when it found on reconsideration that Apro violated section 1281.97; (3) the Federal Arbitration Act (9 U.S.C. § 1 et seq.)

---

[6] Section 1294, subdivision (a), provides an order denying a petition to compel arbitration is appealable, and case law teaches "orders that are the 'functional equivalent' of orders denying a petition to compel arbitration" are appealable as well. (*Williams v. West Coast Hospitals, Inc.* (2022) 86 Cal.App.5th 1054, 1064.) "[A]n order under section 1281.97 is the functional equivalent of denying a petition to compel arbitration, and therefore, appealable." (*Hernandez v. Sohnen Enterprises, Inc.* (2024) 102 Cal.App.5th 222, 237, review granted Aug. 21, 2024, S285696.)

9

preempts section 1281.97; and (4) the attorney fee award must be either vacated entirely or reduced. For the reasons explained below, we find the trial court had authority to reconsider its prior order, but that neither section 1281.97 nor the cases interpreting it required the trial court to find on reconsideration that Apro violated section 1281.97.[7]

### 1. The Trial Court Had Authority to Reconsider Its Prior Order

Apro first argues the trial court abused its discretion when it agreed to reconsider its order denying the initial fee motion. "A trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion standard." (*Farmers Ins. Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 106.) We find no abuse here.

Section 1008, subdivision (b), provides when a party makes an application for an order that is denied, they may make a subsequent or renewed application for the same order based on "new . . . law," and case law teaches this subdivision "imposes no time limitations on such motions." (*Graham v. Hansen* (1982) 128 Cal.App.3d 965, 971.) Section 1008, subdivision (c), provides a court may reconsider a prior order on its own motion "at any time" if it determines there has been a "change of law." Apro argues the trial court abused its discretion in reconsidering its prior order because there was no new law or change of law within the meaning of section 1008. It argues the underlying law — i.e., section 1281.97 — never changed, and appellate opinions interpreting the law do not constitute either new law or a change of law for purposes of reconsideration. We disagree. Although a trial court is not *required* to find new appellate decisions are " 'new law' for purposes of reconsideration," it is not "*preclude*[*d*]" from doing so either. (*Wilson v. The La Jolla Group* (2021) 61 Cal.App.5th 897, 921; see also *Valdez v.*

---

[7]      Given this conclusion, we need not, and do not, address Apro's argument that section 1281.97 is preempted by the Federal Arbitration Act (and we note our Supreme Court is poised to decide the issue, having granted review in *Hohenshelt v. Superior Court* (2024) 99 Cal.App.5th 1319, review granted June 12, 2024, S284498, and *Hernandez v. Sohnen Enterprises, Inc., supra*, 102 Cal.App.5th 222, review granted).

10

*Himmelfarb* (2006) 144 Cal.App.4th 1261, 1275 [appellate decision can "certainly" constitute "a change in the law from what the trial court believed the law to be"]; *International Ins. Co. v. Superior Court* (1998) 62 Cal.App.4th 784, 787-788 [similar].)

Ultimately, however, we need not decide whether new appellate decisions constitute new law or a change of law within the meaning of section 1008 because "[e]ven without a change of law, a trial court has the inherent power to reconsider its prior rulings on its own motion at any time before entry of judgment." (*State of California v. Superior Court* (*Flynn*) (2016) 4 Cal.App.5th 94, 100.) As our Supreme Court explained in *Le Francois v. Goel, supra*, 35 Cal.4th 1094, a trial court has inherent authority to reconsider its prior interim rulings on its own motion, even in the absence of new facts or law, if it determines a prior ruling was erroneous. (*Id*. at p. 1107.) Moreover, "it should not matter whether the 'judge has an unprovoked flash of understanding in the middle of the night' [citation] or acts in response to a party's suggestion. If a court believe ones of its prior interim orders was erroneous, it should be able to correct that error no matter how it came to acquire that belief." (*Id*. at p. 1108.) In its order granting Smith's motion for reconsideration, the trial court cited *Le Francois*, quoted the portions we have just quoted, and stated it "exercises its discretion to reconsider its previous Order." We agree the trial court had authority to reconsider its order denying the initial fee motion and we find it did not abuse its discretion in doing so.

Even where a trial court properly exercises its discretion to reconsider a prior order, however, if "the court is not persuaded the earlier ruling was erroneous, the proper course is to grant reconsideration and to reaffirm the earlier ruling." (*Randy's Trucking, Inc. v. Superior Court* (2023) 91 Cal.App.5th 818, 844.) As we explain in the next section, the trial court's order denying the initial fee motion was not erroneous and the proper course was thus to reaffirm the order denying the initial fee motion.

11

*2.      The Trial Court Properly Found Apro Timely Paid the Filing Fee When It Denied the Initial Fee Motion*

In its order denying the initial fee motion, the trial court found Apro timely paid the fee to initiate arbitration in light of the ambiguity surrounding the due date.  And because Apro timely paid the fee, it did not materially breach the arbitration agreement, and Smith thus had no basis to withdraw his claims from arbitration and proceed in court.  Apro argues these findings are all supported by the evidence, and the trial court erred in reversing itself when it granted the motion for reconsideration.  We agree.

We review the trial court's factual findings for substantial evidence.  (See, e.g., *Burton v. Cruise* (2010) 190 Cal.App.4th 939, 946.)  Here, however, neither party challenges the trial court's factual findings.  To the extent this appeal is based on the proper interpretation of section 1281.97 or on the application of section 1281.97 to the unchallenged and thus undisputed findings, our review is de novo.  (*De Leon v. Juanita's Foods* (2022) 85 Cal.App.5th 740, 749.)

*A.      The relevant law*

Effective January 1, 2020, the Legislature added sections 1281.97, 1281.98, and 1281.99 to the Code of Civil Procedure to ensure "that a company's failure to pay arbitration fees pursuant to a mandatory arbitration provision constitutes a breach of the arbitration agreement and allows the non-breaching party to bring a claim in court." (Stats 2019, ch. 870, § 1.)  Section 1281.97 provides, "In an employment . . . arbitration that requires . . . the [employer] to pay certain fees and costs before the arbitration can proceed, if the fees or costs to *initiate* an arbitration proceeding are not paid within 30 days after the due date the [employer] is in material breach of the arbitration agreement, is in default of the arbitration, and waives the right to compel arbitration."  (§ 1281.97, subd. (a)(1), italics added.)  Section 1281.98 contains a similar rule for fees or costs "required to *continue* the arbitration proceeding."  (§ 1281.98, subd. (a)(1), italics added.) These two provisions are "largely parallel and 'require no different analysis.' "

(*Hohenshelt v. Superior Court, supra*, 99 Cal.App.5th at p. 1325, fn. 2, review granted.) If the employer fails to pay any required fees "within 30 days after the due date," the employee may elect to "[w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction," and if the employee so elects, the court "shall impose sanctions" on the employer by ordering it "to pay the reasonable expenses, including attorney's fees and costs, incurred by the employee . . . as a result of the material breach." (§§ 1281.97, subds. (b)(1), (d), 1281.98, subds (b)(1), (d), 1299, subd. (a).)

When they were initially enacted, sections 1281.97 and 1281.98 did not define the term "due date" or prescribe how to establish it. Effective January 1, 2022, both sections were amended to add the following provision: "To avoid delay, absent an express provision in the arbitration agreement stating the number of days in which the parties to the arbitration must pay any required fees or costs, the arbitration provider shall issue all invoices to the parties as *due upon receipt*." (§§ 1281.97, subd. (a)(2), 1281.98, subd. (a)(2), italics added; compare Stats. 2019, ch. 870, §§ 4 & 5 with Stats. 2021, ch. 222, §§ 2 & 3.) The due date is thus now statutorily defined as the date the invoice is received (absent a provision in the arbitration agreement stating otherwise). In this case, the relevant events all occurred in 2020, before the statutes were amended, and the due date was thus the date specified by the arbitration provider for payment. (See *Reynosa v. Superior Court* (2024) 101 Cal.App.5th 967, 984.)

Beginning in mid-2022, the Courts of Appeal have issued a series of decisions holding the statutory payment deadline in sections 1281.97 and 1281.98 must be strictly enforced and is subject to seemingly no exceptions, and the trial court relied on this line of cases when it granted the motion for reconsideration. In *Cvejic v. Skyview Capital, LLC* (2023) 92 Cal.App.5th 1073, for example, the court held, "The Legislature sought a clear rule for determining whether the late payment of a fee by [the employer] constituted a material contract breach," and if the fee is not paid by the statutory deadline, the employer is in material breach and the employee is entitled to withdraw from arbitration

— "It is that simple." (*Id*. at p. 1078.)  Other cases are similar.  (See *Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 644 [§ 1281.97 "statutorily defines a material breach as a matter of law to be the failure to pay anything less than the full amount due by the expiration of the statutory grace period, rather than leaving materiality as an issue of fact for the trier of fact to determine"]; *Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761, 775-777 [statutory payment deadline is a "bright-line rule" that must be "strictly applied" and is subject to no exceptions]; *De Leon v. Juanita's Foods, supra*, 85 Cal.App.5th at pp. 753, 745 [statute "establishes a simple bright-line rule that . . . failure to pay outstanding arbitration fees within 30 days after the due date results in [a] material breach of the arbitration agreement" and courts may not consider "factors in addition to [the] late payment — for example, whether the delayed payment delayed arbitration proceedings or prejudiced" the employee]; *Williams v. West Coast Hospitals, Inc., supra*, 86 Cal.App.5th at p. 1074 ["the Legislature in enacting sections 1281.97 and 1281.98 chose to neither require nor permit an inquiry into the reasons for [the employer's] nonpayment"]; *Doe v. Superior Court* (2023) 95 Cal.App.5th 346, 357 ["the Legislature established strict breach provisions for nonpayment that did not involve any inquiry into the intent or good faith of an employer or the reasons for nonpayment"].)

These cases thus teach that section 1281.97 establishes a clear, simple, and bright-line rule that must be strictly enforced.  And in determining whether a defendant complied with the rule, the court is permitted to do just two things:  (1) identify the due date, and (2) calculate the statutory payment deadline by adding 30 days to the due date. If payment is made after the statutory payment deadline, the defendant breached the agreement and the plaintiff is entitled to withdraw from arbitration — no ifs, ands, or buts.

B.      *Analysis*

Apro does not challenge the case law or its strict enforcement of the statutory payment deadline, nor do we.  Instead, it contends the trial court got it right the first time

14

when it denied the initial fee motion because it found Apro timely paid the fee to initiate arbitration. In particular, the trial court found the payment was timely based on AAA's June 26 invoice that specified the due date was July 24, which would make August 23 the statutory payment deadline (and the invoice was paid on July 27).[8] We agree.

As the trial court found when it denied the initial fee motion, AAA made a series of errors that created ambiguity and confusion around Apro's payment obligation. In particular, the trial court found the following:

(1)  On June 9, AAA sent a letter to both parties stating Apro owed $1,900 by June 23, and payment had to be made by credit card or electronic check utilizing a secured paylink that would be "forthcoming with instructions." Although not found by the trial court, we reiterate what we noted above (see, *ante*, fn. No. 2) — namely, (1) that AAA sent the parties a second letter that same day stating Apro owed $2,200, and (2) that it is probable the parties did not realize at the time that there were two letters (and it is clear the trial court did not know this).

(2)  On June 25, AAA sent Apro a secured paylink along with an e-mail requesting payment in the amount of $2,200. The secured paylink was sent two days *after* the June 23 due date identified in AAA's June 9 letter.

(3)  On June 26, AAA sent Apro an invoice for $2,200 that stated the "Due Date" was July 24, and that included instructions to mail a check to its New Jersey address.

---

[8]  Apro posits two other payment deadlines based on a complicated argument involving impossibility, coupled with the rule that "[i]f the last day for the performance of any act . . . is a holiday [which includes weekends], then that period is hereby extended to and including the next day that is not a holiday." (§ 12a.) We need not address this argument, and note the trial court did not address it either.

(4)  On July 24, AAA sent Apro an e-mail stating payment of $1,900 was "due today."

(5)  Apro paid $2,200 on July 27.

The trial court found these letters, invoices, and e-mails from AAA were "internally inconsistent," "confus[ed] matters," and created "ambiguity" around the due date, the amount due, and the payment method.  It also found, "Because of the ambiguity regard[ing] the 'due date' of the arbitration fee created by the two invoices, this Court cannot reject the later possible due date of [July 24] indicated by the [June 26] invoice," in which case Apro's payment was timely, because "to find otherwise would allow [Smith] to take advantage of AAA's clerical errors and the ambiguity regarding the 'due date' of the arbitration fee."  In effect, the trial court found that, because of AAA's clerical errors, it would deem July 24 the due date.  And if July 24 was the due date, then August 23 was the statutory payment deadline, and Apro's payment, which was made on July 27, was timely.

Smith does not challenge any of these underlying factual findings (and they are all supported by the evidence in any event).  And, as Apro accurately notes, the facts did not change between the time the trial court denied the initial fee motion and the time it granted the motion for reconsideration.  Moreover, the trial court did not make any new factual findings when it granted the motion for reconsideration, and it did not explicitly reverse or change any of its prior factual findings.  Indeed, the trial court did not mention any of its prior factual findings.  Instead, it held only that, "[b]ased upon the strict construction of . . . sections 1281.97 through 1281.99, and the bright-line rule established by the five Court of Appeal decisions, this Court . . . now finds that [Smith] has carried his burden of establishing that [Apro has] failed to pay the fees and costs to initiate the arbitration" by the statutory payment deadline.  It appears to us that the trial court believed the cases interpreting section 1281.97 *required* it to find Apro's payment was not

16

timely, even in light of the factual findings it had already made. We are not convinced that section 1281.97 or the case law interpreting it requires such a finding.

Section 1281.97 provides payment must be made "within 30 days after the due date," and case law teaches that statutory payment deadline must be strictly enforced. At the time of the events giving rise to this appeal, however, section 1291.97 did not define the "due date" or prescribe how to establish it. (See *Reynosa v. Superior Court, supra*, 101 Cal.App.5th at p. 984.) Here, when the trial court denied the initial fee motion, it found AAA's clerical errors created ambiguity about whether the due date was June 23 or July 24, and, as a result of this ambiguity, it deemed the later date (i.e., July 24) was the due date. This finding is fully supported by the evidence, and nothing in section 1281.97 or the cases interpreting it required the trial court to deem June 23 as the due date.

As Apro accurately notes, in most of the cases interpreting section 1281.97, it was undisputed the defendant's payment was made after the statutory deadline, and the issue whether the late payment could be excused or the deadline could be extended. (See, e.g., *Gallo v. Wood Ranch USA, Inc., supra*, 81 Cal.App.5th at p. 632 [the defendant paid fee late because partner failed to forward invoice to associate handling case]; *Espinoza v. Superior Court, supra*, 83 Cal.App.5th at p. 772 [the defendant paid fee late due to its own clerical error]; *De Leon v. Juanita's Foods, supra*, 85 Cal.App.5th at p. 748 [the defendant agreed it paid fee late]; *Williams v. West Coast Hospitals, Inc., supra*, 86 Cal.App.5th at p. 1063 [the defendant paid fee "[m]ore than 30 days after the deadline"]; *Cvejic v. Skyview Capital, LLC, supra*, 92 Cal.App.5th at p. 1075 [arbitration provider confirmed fees not paid by deadline].) Apro argues this case is distinguishable because there was no late payment to excuse and no need to extend the statutory payment deadline. Instead, the trial court found the due date was July 24, the statutory payment deadline was thus August 23, and Apro's payment was timely made on July 27. We agree with Apro that most of the cases are distinguishable on this basis. To this we would add

17

that most of the cases are also distinguishable because they do not discuss the "due date" or how to ascertain it.

One case — *Reynosa v. Superior Court, supra*, 101 Cal.App.5th 967 — briefly discusses the due date, and it supports the trial court's finding that Apro's payment was timely. As relevant here, the arbitration provider in *Reynosa* sent the parties an e-mail on July 19 stating the " 'Final Date for Payment' " was October 29 and " 'Your invoice will follow.' " (*Id*. at p. 974.) Two days later, on July 21, it sent the defendant an invoice that specified payment was " 'due upon receipt.' " Payment was made on September 17. (*Ibid*.) The plaintiff argued the statutory payment deadline was 30 days after the July 21 invoice (i.e., August 20), and payment was thus untimely. The trial court disagreed, finding the defendant paid prior to the October 29 due date specified in the provider's July 19 e-mail, and the appellate court affirmed. It noted the relevant events occurred in 2021, *before* section 1281.98 was amended to provide, " 'absent an express provision in the arbitration agreement stating the number of days in which the parties to the arbitration must pay any required fees or costs, the arbitration provider shall issue all invoices to the parties as due upon receipt.' " (*Reynosa*, at p. 982; see *id*. at p. 984.) It then explained, "Section 1281.98 as it then existed . . . did not prescribe how to establish and/or modify the 'due date' from which the 30-day grace period begins to run. Thus, October 29 . . . appears to be the appropriate due date, whether this date was amenable to both parties, amenable to only one party, or decided upon exclusively by [the provider]." (*Id*. at p. 984.) The payment made on September 17 was thus timely.[9] (*Reynosa*, at p. 984.) Although the *Reynosa* court did not find the different due dates created uncertainty and

_____

[9] The *Reynosa* court also found the payment was $250 short, and the defendant was thus in material breach of the arbitration agreement because it failed to pay " 'the *full amount* due by the expiration of the statutory grace period.' " (*Reynosa v. Superior Court, supra*, 101 Cal.App.5th at p. 985, italics added.)

ambiguity about the defendant's payment obligation, it certainly could have, and that would have been an alternative basis for its holding that the payment was timely.

This case is similar. AAA sent a letter on June 9 stating payment was due by June 23, and it also sent an invoice on June 26 stating the due date was July 24. As in *Reynosa*, when these events occurred in 2020, section 1281.97 "did not prescribe how to establish and/or modify the 'due date' from which the 30-day grace period begins to run," the trial court deemed July 24 "to be the appropriate due date" based on the June 26 invoice, and the payment made on July 27 was thus timely. (*Reynosa v. Superior Court, supra*, 101 Cal.App.5th at p. 984.)

We find two other cases — *Cvejic v. Skyview Capital, LLC, supra*, 92 Cal.App.5th 1073, and *Hohenshelt v. Superior Court, supra*, 99 Cal.App.5th 1319, review granted — are also relevant. Both involved actions taken by the arbitration provider to extend the payment deadline, but both are distinguishable in ways we find instructive. In *Cvejic*, several days after the statutory payment deadline had passed, the plaintiff asked the arbitrator if fees had been paid, and the arbitrator confirmed they had not. The day after that, the arbitrator held a conference call to discuss the situation, and during that call, it set a new payment deadline, and the defendant paid the fees by that new deadline. (*Cvejic*, at p. 1075.) The trial court found the payment was late and the appellate court affirmed, holding, "The statute does not empower an arbitrator to cure a party's missed payment. There is no escape hatch for companies that may have an arbitrator's favor. Nor is there a hatch for an arbitrator eager to keep hold of a matter. As the trial court observed, 'If . . . the drafting party were permitted numerous continuances for failure to pay arbitration fees, therefore delaying the proceedings, . . . section 1281.98 would have no meaning, force, or effect.' " (*Id*. at p. 1078.)

*Hohenshelt v. Superior Court, supra*, 99 Cal.App.5th 1319, review granted, is similar. There, the arbitration provider sent the employer invoices on July 29 and August 29, and "both invoices provid[ed] that payment [was] 'due upon receipt,' " which

would make the statutory payment deadline August 28 and September 28, respectively. (*Id*. at p. 1322.) On September 30, the arbitration provider sent the parties a letter stating, " 'Pursuant to our fee and cancellation policy, all fees must be paid in full by October 28.' " (*Ibid*.) The employer paid all fees by October 5 (i.e., after the statutory payment deadlines, but before the deadline specified in the provider's September 30 letter). (*Id*. at p. 1323.) The court held the arbitration provider was not empowered to cure the late payment, and the employer thus materially breached the arbitration agreement by failing to pay the fees by the statutory payment deadline. (*Id*. at p. 1325.)

We have no quarrel with the holdings in *Cvejic* or *Hohenshelt*, but the facts here are very different. This not a case where the arbitration provider tried to cure a late payment or gave a party a continuance after the statutory payment deadline had passed. Instead, this is a case where the arbitration provider made a series of clerical errors that created confusion and ambiguity about the due date and thus the statutory payment deadline. There is no suggestion AAA's June 26 invoice specifying a July 24 due date was an attempt to cure a late payment or extend the statutory payment deadline after it had already passed. Indeed, at the time the invoice was sent, and unlike in *Cvejic* and *Hohenshelt*, the statutory payment deadline (i.e., based on the June 23 due date specified in the June 9 letter) had not yet passed and was still almost a month away. As the trial court found, AAA's various invoices, letters, and e-mails were inconsistent and created ambiguities about Apro's payment obligations. Did Apro owe $1,900 (as stated in one of the June 9 letters and the July 24 e-mail), or did it owe $2,200 (as stated in the second June 9 letter, the June 25 e-mail, and the June 26 invoice)? Did payment have to be made by using the secured paylink (as stated in the June 9 letter and the June 25 and July 24 e-mails), or could it be made by mailing a check (as stated in the June 26 invoice)? And most importantly, was the due date June 23 (as stated in the June 9 letter), or was it July 24 (as stated in the June 26 invoice)? Given the unique facts of this case, we find nothing in section 1281.97 or the case law interpreting it required the trial court to deem

20

the earlier of the two dates (i.e., June 23) was the due date.  Instead, the trial court was fully justified in deeming the due date to be the later of the two dates (i.e., July 24), which means Apro's payment was timely.  To quote *Cvejic*, "It is that simple."  (*Cvejic v. Skyview Capital, LLC, supra*, 92 Cal.App.5th at p. 1078.)

Because the trial court's initial factual finding that Apro's payment was timely is supported by the evidence and it does not appear the trial court altered that finding in its ruling on the motion for reconsideration, and because it made no legal error in so finding, " 'the proper course' " was "to reaffirm the earlier ruling." (*Randy's Trucking, Inc. v. Superior Court, supra*, 91 Cal.App.5th at p. 844.)  We thus reverse the order granting Smith's motion for reconsideration and direct the trial court to reaffirm the order denying his initial fee motion.

### DISPOSITION

The order granting Smith's motion for reconsideration and awarding him $19,942.50 in attorney fees is reversed.  Each party shall bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


_____/s/_____
EARL, P. J.


We concur:


_____/s/_____
BOULWARE EURIE, J.


_____/s/_____
WISEMAN, J.[*]

_____

[*]     Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.